<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID R. PFEIL, | : |
| Plaintiff, | : |
| v. | Civil Action No.: 3:18-cv-00676-BRM-DEA |
| LABORATORY CORPORATION OF AMERICAN HOLDINGS, *et al.*, | **OPINION** |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

     Before this Court are (1) Defendants Laboratory Corporation of America Holdings ("LabCorp"), Leon Bronson Barnard ("Barnard"), James P. Whelan ("Whelan"), Gary Martin Huff ("Huff"), and David P. King's ("King") (together with Barnard, Whelan, and Huff, "Individual Defendants") (Individual Defendants together with LabCorp, "Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No. 7), and (2) Plaintiff David R. Pfeil's ("Pfeil") Cross-Motion to Remand and for Leave to Amend the Complaint (ECF No. 13). Having reviewed the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Pfeil's Motion to Remand and Amend is **GRANTED IN PART** and **DENIED AS MOOT IN PART**, and Defendants' Motion to Dismiss is **DENIED AS MOOT**.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Pfeil's alleged unlawful termination from LabCorp, where he worked from June 29, 2007, until July 2017. (Compl. (ECF No. 1-1) ¶¶ 9, 52.) Pfeil suffered strokes in February 2006 and December 2014, which left him with several disabilities, including left-side body weakness, difficulty walking, and hearing loss in his left ear. (*Id.* ¶ 10.) Pfeil alleges LabCorp knew of his disabilities. (*Id.*) From late 2007 though 2013, Pfeil created and managed sales of a new business line for LabCorp in which LabCorp sold "de-identified" laboratory results to third parties. (*Id.* ¶ 12.) The third parties used the de-identified results to analyze trends among the data. (*Id.*) Pfeil also created a separate business for LabCorp that involved the sale of "patient identified data." (*Id.*) Pfeil alleges the revenue from the two business lines he created now totals several million dollars per year. (*Id.*)

Shortly before Pfeil's termination, William McGinnis ("McGinnis"), a LabCorp employee who is younger than Pfeil and not disabled, was promoted to a Vice President position and appointed to lead LabCorp's Accountable Care Organization ("ACO"). (*Id.* ¶ 36.) After Pfeil's termination, McGinnis was demoted from the ACO lead role, and LabCorp gave the position to another LabCorp employee, who is younger than Pfeil and not disabled. (*Id.*)

On May 16, 2017, an unnamed LabCorp employee informed Pfeil that Bernard told other employees that Pfeil was going to be terminated shortly. (*Id.* ¶ 37.) Because these employees were not in managerial or supervisory positions in relation to Pfeil, Barnard's actions breached many of LabCorp's policies. (*Id.* ¶ 38.) Also around this time, an employee in the IT Department informed Pfeil that Barnard was telling other employees LabCorp was conducting a "witch hunt" targeting Pfeil, once again breaching many company policies. (*Id.* ¶¶ 39-40.) Also around mid-May, two other LabCorp employees informed Pfeil that Huff, who was LabCorp's Senior Vice President of

Health Systems Alliances and its Chief Executive Offices, had made disparaging and negative remarks about Pfeil to them. (*Id.* ¶ 41.)

On May 31, 2017, Pfeil spoke to his supervisor, Whelan, to address the issue. (*Id.* ¶ 42.) Whelan assured Pfeil his job was secure, and that he had spoken with Barnard about the comments. After his meeting with Whelan, Pfeil was sure his employment was secure and "made several long-term investment decisions based upon that assurance." (*Id.*)

However, on June 27, 2017, Whelan took Pfeil out to lunch and informed Pfeil his position was being reduced in force. (*Id.* ¶ 43.) Whelan asked Pfeil to provide him with options for a potential severance package so as to avoid any discrimination or unlawful employment claims. (*Id.*) Later that night, Pfeil provided Whelan with four exit options, two of which included Pfeil continuing employment with LabCorp in different capacities. (*Id.*) When Pfeil and Whelan spoke about these options, Whelan informed Pfeil that his exit options, especially those that included Pfeil continuing to work for LabCorp, were not acceptable. (*Id.* ¶ 44.)

Despite Whelan's reaction, Pfeil requested that LabCorp make counter-offers to his proposed exit options. (*Id.* ¶ 45.) While he waited to hear back, he continued work. (*Id.* ¶ 46.) To establish some security in his employment status, Pfeil applied for a lower-level position, but despite his qualifications, he was not given an interview and the positions was ultimately filled by someone younger and not disabled. (*Id.* ¶ 50.) Even though Pfeil's employment was uncertain at this time, he completed two contracts for LabCorp, "valued conservatively at $690,000 of annualized business for Defendant." (*Id.* ¶ 51.)

Pfeil had not received written notice of his impending termination, but on July 7, 2017, LabCorp sent him a "HR Appraisal Review Acknowledgement For Period Ending June 2017." (*Id.* ¶ 47.) Pfeil alleges the document, which LabCorp asked him to sign, was an acknowledgement of

a performance review he never participated in and that was never conducted. (*Id.*) Pfeil surmised LabCorp could later write a negative review and claim Pfeil had acknowledged it. (*Id.*) Pfeil told Whalen it would be improper for Pfeil to sign the acknowledgement, and Whalen agreed. (*Id.*)

Pfeil contends his performance reviews had been overwhelmingly positive. (*Id.* ¶¶ 48-49.) In 2013, Pfeil received his first "Employee Appraisal" from LabCorp, and "received a perfect score of 100/100, exceeding expectations." (*Id.* ¶ 48.) Pfeil's most recent performance review, completed on June 9, 2014, showed, once again, "a perfect score of 100/100, exceeding expectations in all categories." (*Id.* ¶ 49.)

On July 5, 2017, Pfeil received an award from King, who is LabCorp's Chairman and President. (*Id.* ¶ 77.) Despite the award and Pfeil's positive performance reviews, Whelan made clear that Pfeil would be terminated, and in late July 2017, informed Pfeil that he would receive written confirmation of the termination. (*Id.* ¶ 52.) On August 1, 2017, Pfeil was sent an "Employment Separation Agreement and General Release," refused to execute it, and was then prevented from continuing to work for LaCorp, as evidenced by the "revocation of [Pfeil's] email address, computer access, and phone access." (*Id.* ¶ 53.) Pfeil wanted to continue working with LabCorp in some capacity and met with William B. Haas ("Haas"), who was LabCorp's Senior Vice President and General Manager of the Northeast Division, about potentially working as an independent contractor for LabCorp. (*Id.* ¶ 54.) Haas ultimately informed Pfeil that LabCorp did not want Pfeil working for them in any capacity, especially if he was not going to waive any legal claims by signing Employment Separation Agreement. (*Id.*)

Pfeil alleges he suffered great mental anguish and emotional distress beginning in August 2017, when it became clear he could not continue working for LabCorp. (*Id.* ¶ 55.) This distress and anguish displayed itself through anxiety, depression, loss of sleep, and loss of appetite. (*Id.*)

These symptoms became so serious that Pfeil consulted with a psychologist several times in the fall of 2017. (*Id.*) Pfeil alleges Whelan disparaged him during a conference call in September of 2017. (*Id.* ¶ 56.) When asked about who was going to replace Pfeil, with about eighteen people listening in, Whelan stated Pfeil "did not do much for the company." (*Id.*)

On December 15, 2017, Pfeil filed the Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, Civ. A. No. MID-L-7390-17. (Notice of Removal (ECF No. at 2).) Pfeil asserts twenty-one claims: three claims pursuant to the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"), and nineteen claims pursuant to New Jersey common law. (ECF No. 1-1 ¶¶ 78-159.) On January 16, 2018, Defendants filed the Notice of Removal with this Court pursuant to 28 U.S.C. § 1441, asserting this Court's original jurisdiction under 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties. (ECF No. 1.) On January 23, 2018, Defendants filed the Motion to Dismiss. (ECF No. 7.) Pfeil opposes the Motion. (ECF No. 11.) On February 6, 2018, Pfeil filed the Motion to Remand and for Leave to Amend the Complaint. (ECF No. 13.) Defendants oppose the motion by way of their Reply Brief in Support of the Motion to Dismiss. (ECF No. 18.)

## II. LEGAL STANDARDS

### A. Motion to Remand

A notice of removal of a civil action must be filed by a defendant within thirty (30) days of receiving the complaint. 28 U.S.C. § 1446(b)(1). However, where it is not evident from the face of the complaint that a case is removable, "a notice of removal may be filed within thirty [(30)] days after receipt by Defendants . . . of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447. Grounds for remand include: "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993). A motion for remand on the basis of a procedural defect in the removal must be filed within thirty (30) days of the notice of removal, 28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment," *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212-13 (3d Cir. 1991) (citing 28 U.S.C. § 1447(c)).

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Id.* at 396-403. Additionally, when a case is removed, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

### B. Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184

F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### III. DECISION

#### A. Motion to Amend and Remand

Pfeil argues the case should be remanded to the Superior Court of New Jersey for two reasons. First, Pfeil argues the Notice of Removal and the Motion to Dismiss were improper because Defendants' counsel, Jeffrey A. Meyer, Esq. ("Meyer"), was administratively ineligible to practice law in New Jersey when he filed the Notice and the Motion. (Pl.'s Br. in Opp. to Ds.' Mot. to Dismiss and in Supp. of Mot. to Remand (ECF No. 11-1) at 2-4.) Second, he seeks to amend his Complaint to add Haas as a nondiverse defendant. (*Id.* at 4-7.) The Court considers these arguments in turn.

#### 1. The Notice of Removal

Pfeil argues the Notice of Removal is defective as a matter of law because Mayer, who filed the Notice of Removal, was ineligible pursuant to Local Civil Rule 101.1(b), which provides "[a]ny New Jersey attorney deemed ineligible to practice law by order of the New Jersey Supreme Court pursuant to New Jersey Court Rule 1:28-2(a) shall not be eligible to practice law in this Court during the period of such ineligibility." (*Id.* at 2.)

In response, Defendants argue Local Civil Rule 101.1(b) applies to attorneys who are ineligible pursuant to New Jersey Court Rule 1:28-2(a), which refers to payments made to the New Jersey Lawyers' Fund for Client Protection's treasurer. (ECF No. 18 at 28-29.) An attorney becomes ineligible under Local Civil Rule 101.1(b) under two circumstances: (1) a failure to pay the required fees to the Client Protection Fund, and (2) resignation from the New Jersey bar. (*Id.*

at 29 (citing *Shamshoum v. Bombay Café*, 257 F. Supp. 777, 780 (D.N.J. 2003) (additional citations omitted)). Meyer certifies he had not complied with New Jersey's Continuing Legal Education requirements but did not fail to pay the required fees to the Client Protection Fund or resign from the New Jersey bar. (ECF No. 18-1 ¶¶ 2-3.)

The Court finds Meyer was ineligible pursuant to Local Civil Rule 101.1(b) and therefore the Notice of Removal was defective. This Court has found an attorney who is administratively ineligible in New Jersey may not file papers or appear before this Court. *Hobbs v. US Coastal Ins. Co.*, No. 17-3673, 2017 WL 4922007, *2 (D.N.J. Oct. 31, 2017). In *Hobbs*, the Hon. Joseph H. Rodriguez, U.S.D.J. found an attorney who was ineligible to practice in New Jersey could not sign pleadings and motions. *Id.* Judge Rodriguez deemed a motion to dismiss that the ineligible attorney had signed to be defective as an unsigned document. *Id.* However, the attorney's firm timely cured the error by re-filing the motion with a proper signature. *Id.*

Here, there has been no curing and refiling of the Notice of Removal.[1] The Court finds no evidence that Meyer acted in bad faith. Nevertheless, because he was administratively ineligible in New Jersey when he filed the Notice of Removal, the Court finds the removal was defective and remand is appropriate. Therefore, Pfeil's Motion is **GRANTED** as to that issue.

2. **Joinder of Haas**

Because the Court finds remand is appropriate, it no longer has jurisdiction and cannot reach the merits of Pfeil's Motion to Amend the Complaint to add Haas.[2] Consequently, that portion of Pfeil's Motion is **DENIED AS MOOT**.

---

[1] Defendants Motion to Dismiss would also be defective as an unsigned document, but the Court finds the motion is moot because the case will be remanded to the Superior Court of New Jersey.

[2] Though the Court no longer has jurisdiction and cannot reach the merits of the Motion to Amend, it appears joinder would have been appropriate and the result would have been the same even if the Notice of Removal had been proper.

Therefore, Pfeil's Motion to Remand and to Amend is **GRANTED IN PART** and **DENIED IN PART**.

### B. Motion to Dismiss

As the Court has found it lacks subject matter jurisdiction, it cannot reach the merits of Defendants' Motion to Dismiss and both motions are **DENIED AS MOOT**.

### IV. CONCLUSION

For the reasons set forth above, Pfeil's Motion to Remand and Amend the Complaint (ECF No. 11) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. Defendants' Motion to Dismiss (ECF No. 7) is **DENIED AS MOOT**. This matter is therefore **REMANDED** to the Superior Court of New Jersey, Law Division, Middlesex County and the case is **CLOSED**. An appropriate order will follow.

**Date: August 30, 2018**                    */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**